United States District Court
Southern District of Texas
**ENTERED**
February 01, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| J.V. b/n/f JOSE VEGA AND | § | |
| MARGARITA VEGA, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Cause Number 1:21-cv-115 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Defendant "Brownsville ISD's Motion to Dismiss for Lack of Subject Matter Jurisdiction" ("Motion"), "Plaintiffs['] Response to Defendant Brownsville Independent School District's Motion to Dismiss for Lack of Subject Matter Jurisdiction" ("Response"), and "Brownsville ISD's Supplement to Motion to Dismiss for Lack of Subject Matter Jurisdiction" ("Supplement"). Dkt. Nos. 5, 9, 10. For the reasons provided below, it is recommended that the Court: (1) **GRANT** the Defendant's Motion; and (2) **DISMISS WITH PREJUDICE** all of Plaintiffs' claims; and (3) **DIRECT** the Clerk of Court to close this case.

## I.     Background and Procedural History

### A.     Factual Background

This is a disability rights case arising out of an injury allegedly sustained by a minor student while on a Brownsville Independent School District ("BISD") middle school field trip. Plaintiffs, Jose and Margarita Vega, filed this lawsuit on behalf of their minor son, J.V., against Defendant, BISD. Dkt. No. 1 at 1. Plaintiffs assert claims under the

Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("§ 504" or "RA"), and Texas Human Resources Code ("THRC").  Dkt. No. 1 at 12-14.

Plaintiffs allege that J.V., born on February 12, 2004 and diagnosed with cerebral palsy, has an orthopedic impairment, speech impairment, low intelligence quotient, and a hip that dislocates often.  *Id.* at 3.  His speech impairment is such that he "can make sounds that are audible[,] but he is hard to understand."  *Id.*  Due to his physical and cognitive impairments, J.V. spends a significant amount of time each day in a wheelchair. *Id.* at 5.

As a result of his impairments, BISD allegedly provided J.V., a student at Lucio Middle School in Brownsville, Texas, a special table on which two people would place J.V. to stretch his legs prior to moving him.  *Id.* at 5.  Plaintiffs allege that J.V. has a propensity for toileting accidents, and as a result, attended class in a room with its own restroom.  *Id.* at 4-5.  J.V.'s condition required that two BISD staff members physically assist him with moving between his wheelchair and a toilet seat whenever he needed to use a restroom. *Id.* at 5-6.

On March 29, 2016, BISD took J.V. and his classmates on a field trip to the Porter Zoo in Brownsville, where J.V. allegedly complained of pain in his leg to educational aide, Enrique Rodriguez.  *Id.* at 6, 8.  Plaintiffs do not identify which leg J.V. experienced pain in, but allege that a school nurse later noted that J.V.'s left leg was swollen.  *Id.* at 9. Afterwards, the students traveled to a "Golden Cor[r]al" restaurant, where Rodriguez took J.V. to and assisted him with using the restroom.  *Id.* at 8.[1]  Plaintiffs allege that, while in the restroom, Rodriguez  attempted to stretch J.V. in an unsafe manner and/or failed to

---

[1] Plaintiffs fail to identify the address of the location giving rise to this lawsuit.

stretch J.V. before he attempted to change his diaper ("Incident").  *Id.* at 9.  J.V. allegedly continued to complain of pain in his leg while in the restroom.  *Id.*

After the field trip, J.V. returned home and complained of the same pain to his mother.  *Id.* at 10.  She called for an ambulance, which arrived and transported J.V. to a hospital, where he was diagnosed with a femoral fracture.  *Id.* at 10.  On the date of the Incident, J.V. was twelve years old and weighed approximately sixty pounds, and Rodriguez weighed approximately 315 pounds.  *Id.* at 4, 8.

**B.    Procedural History**

**1.    First TEA Case and First Federal Case**

More than one year after the Incident, on August 21, 2017, Plaintiffs filed claims arising therefrom with the Texas Education Agency ("TEA") against BISD under the Individuals with Disabilities Education Act ("IDEA"), ADA, § 504, Title IX of the Education Amendments of 1972 ("Title IX"), and the First, Fourth, and Fourteenth Amendments of United States Constitution ("First TEA Case").  *See J.V. v. Brownsville Indep. Sch. Dist.*, Dkt. No. 63 at 89, 97-103, No. 1:18-CV-008, 2020 WL 3415747 (S.D. Tex. June 22, 2020) (citing *Joshua V., b/n/f Jose and Margarita V. v. Brownsville Independent School District*, No. 286-SE-0817, Texas Education Agency).

On September 21, 2017, the TEA's Special Education Hearing Officer ("SEHO") dismissed without prejudice all non-IDEA claims for lack of subject matter jurisdiction.  *Id.* at 46.   Thereafter, the parties filed a "Notice of Rule 11 Agreement" ("Rule 11 Agreement").  *Id.* at 16-21.  In their Rule 11 Agreement, the parties agreed that the "gravamen" of Plaintiffs' claims addressed "civil rights violations and not IDEA" violations. *Id.* at 20.  Plaintiffs also agreed that BISD provided J.V. with a free appropriate public education "pursuant to IDEA and Section 504."  *Id.*  Further, Plaintiffs agreed to

dismiss the First TEA Case and subsequently file suit in federal court.  *Id.*  Plaintiffs then moved to dismiss without prejudice their remaining claim under the IDEA, and on January 2, 2018, the SEHO dismissed the First TEA Case.  *Id.* at 6-7.

On January 12, 2018, Plaintiffs appealed the ADA and § 504 claims from the First TEA Case to the United States District Court for the Southern District of Texas ("First Federal Case").  *See J.V. v. Brownsville Indep. Sch. Dist.*, No. 1:18-CV-008, 2020 WL 3415747, at *2 (S.D. Tex. June 22, 2020).  On June 22, 2020, in dismissing without prejudice Plaintiffs' ADA and § 504 claims for lack of subject matter jurisdiction, this Court held as follows:

> A plaintiff cannot circumvent the IDEA's administrative exhaustion requirement by repacking them as claims under some other statute when those same claims could have been brought under the IDEA.  A plaintiff alleging claims under [§ 504 of the RA] or the ADA must first exhaust his or her administrative remedies for claims under the IDEA when the relief being sought is also available under the IDEA's remedial scheme.
>
> *     *     *
>
> For the reasons stated above, the Court finds that Plaintiffs have failed to exhaust their state administrative remedies.

*Id.* at *7-*8 (internal citations omitted).

### 2.    Second TEA Case and Second Federal Case

On December 21, 2018, Plaintiffs filed an IDEA claim with the TEA against BISD ("Second TEA Case").  Dkt. No. 10 at 9 (citing *Student, b/n/f Parent and Parent v. Brownsville Indep. Sch. Dist.*; No. 120-SE-1218, Texas Education Agency).[2]  Plaintiffs' IDEA claim allegedly arose out of BISD's actions in the one year leading up to December 21, 2018.  *See id.*  In a decision on the merits of the Second TEA Case, the SEHO denied

---

[2] The parties neither identify the style of nor filed any pleadings, motions, or orders from the Second TEA Case.  Thus, the Court takes judicial notice of the "Decision of the Hearing Officer" in *Student b/n/f Parent and Parent v. Brownsville Indep. Sch. Dist.*, No. 120-SE-1218, Texas Education Agency, available at https://tea.texas.gov/sites/default/files/120-SE-1218_Brownsville%20ISD.pdf.

the IDEA claim.  *See* Decision of Hearing Officer at 29 in *Student, b/n/f Parent and Parent v. Brownsville Indep. Sch. Dist.*; No. 120-SE-1218; Texas Education Agency.  The SEHO did not discuss the March 29, 2016 Incident.  *See id.*

On February 26, 2020, Plaintiffs appealed the IDEA claim from the Second TEA Case to the United States District Court for the Southern District of Texas ("Second Federal Case").  *J.V. b/n/f Jose and Margarita Vega*, Dkt. No. 1 at 1, No. 1:20-cv-31 (S.D. Tex. June 22, 2020).  In the Second Federal Case complaint, Plaintiffs repeatedly reference the March 29, 2016 Incident, but allege that their IDEA claim allegedly arose out of BISD's actions in the one year leading up to December 21, 2018. *See id.* at Dkt. No. 1 at 3, 4, 9, and 10.

More than seven months after this Court dismissed without prejudice Plaintiffs' ADA and § 504 claims in the First Federal Case, the parties filed a stipulation of dismissal of the IDEA claim in the Second Federal Case.  *Id.* at Dkt. No. 15 at 1.  On March 8, 2021, in the Second Federal Case, the Court ordered that "J.V.'s claims against Brownsville Independent School District are **DISMISSED WITH PREJUDICE**." *Id.* at Dkt. No. 17 at 1.

### 3.    Third TEA Case and the Instant and Third Federal Case[3]

In February 2021, Plaintiffs filed ADA, § 504, and IDEA claims with the TEA against BISD arising out of the Incident ("Third TEA Case").  *See* Dkt. No. 10 at 9-10 (citing *Joshua V. b/n/f Jose & Margarita V. v. Brownsville Independent School District*,

---

[3] In the Motion, Response, and Supplement, all parties repeatedly fail to explain the resolution of every claim, or even identify every claim, asserted in the First TEA Case, Second TEA Case, Third TEA Case, First Federal Case, and Second Federal Case.  Moreover, in the instant and Third Federal Case, all parties repeatedly fail to identify which of the three claims they discuss throughout much of their legal analyses. Thus, the Court construes any argument or response that does not refer to a specific claim as referring to all claims and takes judicial notice of all publicly available documents filed in the First TEA Case, Second TEA Case, Third TEA Case, First Federal Case, Second Federal Case, and Third Federal Case.

No. 100-SE-0221, Texas Education Agency); *see also* Dkt. No. 10-4 at 1-2.  The parties subsequently filed a stipulation of dismissal of all claims.  Dkt. No. 10-3 at 5.  The SEHO dismissed with prejudice all claims based on the parties' stipulation of dismissal.  Dkt. No. 10-4 at 2.

On August 3, 2021, Plaintiffs filed the current Original Complaint, in which they assert ADA, § 504, and THRC claims against BISD arising out of the Incident ("Third Federal Case").  Dkt. No. 1 at 11-14.[4]  Specifically, Plaintiffs assert that the "facts as previously described demonstrate that [BISD] violated J.V.'s rights as contemplated by the [ADA]" and that BISD "failed and refused to reasonably accommodate and modify the services needed by J.V. in violation of Title II of the ADA."  Dkt. No. 1 at 12.  The "facts previously described" refer to approximately eight pages of facts in the Original Complaint, all of which arise out of the Incident.  Dkt. No. 1 at 3-11.

Plaintiffs also assert that BISD violated § 504 of the RA by failing "to accommodate J.V.'s unique and individualized needs while on the field trip so he could be toileted safely, or provide him necessary modifications to the toileting practices used by [the educational aide] while on the field trip" and by failing "to provide [J.V.] a safe and non-hostile educational environment[.]"  Dkt. No. 1 at 13.

Finally, Plaintiffs assert that BISD violated the THRC by failing "to provide J.V. reasonable accommodations" and that J.V. "was injured because of such failures[.]"  Dkt. No. 1 at 14.  Plaintiffs do not assert an IDEA claim in this case.

---

[4] Based on the Original Complaint in the Third Federal Case, Plaintiffs are apparently attempting to appeal their ADA and § 504 claims from the Third TEA Case and filing a THRC claim for the first time.

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case.  Fed. R. Civ. P. 12(b)(1).  Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996);  *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995).  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.  *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

### B.    IDEA

The IDEA requires states to provide a "free appropriate public education" ("FAPE") to children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  The purpose of the IDEA is to provide all disabled children with a free appropriate public education that "emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  A FAPE consists of "special education and related services" that are individually tailored to meet a child's unique educational needs, along with sufficient "supportive services" to help the child benefit from instruction.  *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748–49, 197 L. Ed. 2d 46 (2017) (citing 20 U.S.C. §§ 1401(9), (26), (29)).

The IDEA, in turn, "requires states and local education agencies receiving federal IDEA funds to make a FAPE available to children with certain disabilities between the ages of 3 and 21." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (*en banc*).  Moreover, states receiving federal funding under the IDEA must provide a FAPE to each disabled child within its boundaries and ensure that the education received is "in the least restrictive environment consistent with the disabled student's needs." *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997).  Creating an "Individualized Education Plan" ("IEP") for each student is an essential part of providing a FAPE.  *Fry,* 137 S. Ct. at 753.

States that receive funding through the IDEA must establish and maintain procedures to resolve disputes over the adequacy of a disabled student's education.  20 U.S.C. § 1415(a) (Agencies must "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provisions of a free appropriate public education by such agencies.").  The IDEA provides a mechanism for any party to file a complaint, which requires the local education agency to hold a preliminary meeting to resolve the complaint.  20 U.S.C. §§ 1415(b)(6), (f)(1)(B)(i).  The complaint proceeds through a state administrative process that consists of an impartial "due process hearing" to resolve the complaint, which is conducted by a local or state education agency.  20 U.S.C. § 1415(f)(1)(A).

A party "aggrieved by the findings and decision" of the local or state education agency may bring an IDEA claim in federal court.  Significantly, the IDEA requires plaintiffs to exhaust their remedies pursuant to this administrative process before filing an action in federal court.  20 U.S.C. § 1415(l).  A district court reviewing a state hearing officer's decision must accord due weight to the hearing officer's findings, but must reach

an independent decision based on a preponderance of the evidence.  *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000), *cert. denied*, 531 U.S. 817 (2000). The district court's review is essentially *de novo.  Id.*

**C.    Other Claims Subject to Administrative Exhaustion Requirement Under the IDEA, Including Claims Under the ADA and RA**

"[A] complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies or proved that exhaustion would be futile or inadequate." *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 102, 112 (5th Cir. 1992). Absent an exception, a plaintiff's failure to exhaust his state administrative remedies deprives the Court of subject matter jurisdiction. *See Wood v. Katy Indep. Sch. Dist.*, No. H-09-1390, 2010 WL 11417849, at *3 (S.D. Tex. Sept. 27, 2010); *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010) ("The exhaustion requirement is not limited to claims brought under the IDEA.").

Significantly, a party must also first exhaust the IDEA's administrative process before bringing claims under other statutes that overlap with the IDEA.  *See Fry,* 137 S. Ct. at 750 ("[A] plaintiff bringing suit under the ADA, Rehabilitation Act [including § 504 thereunder], or similar laws must in certain circumstances–that is, when 'seeking relief that is also available under' the IDEA–first exhaust the IDEA's administrative procedures.");  *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) ("The IDEA requires administrative exhaustion not just of claims arising under it, but also of Rehabilitation Act claims that overlap with the IDEA.").

Section 1415(l) of the IDEA allows non-IDEA claims to be brought in federal court, but only after the IDEA administrative procedures have been fully exhausted as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).   Said another way, exhaustion is required for claims brought under § 504 of the RA and Title II of the ADA when a plaintiff seeks "relief for the denial of a free appropriate public education." *See Fry*, 137 S. Ct. at 754–55.   The applicability of § 1415(l)'s exhaustion requirement depends on whether the suit seeks redress for a denial of a FAPE, and "[i]f a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA." *Id.* at 754.  However, a complaint that seeks relief, independent of any FAPE denial, is not subject to § 1415(l)'s exhaustion requirement. *Id.*  Therefore, in determining whether a plaintiff's complaint seeks relief for a denial of a FAPE, the Court must "look to the substance, or gravamen" of the complaint. *Id.* at 752.  This inquiry looks to the "substance, not surface." *Id.* at 755.

To determine whether the gravamen of a complaint seeks redress for a denial of a FAPE under the IDEA as opposed to a right under § 504 of the RA or Title II of the ADA, the Court must examine two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school–say, a public theater or library? And second, could an *adult* at the school–say, an employee or visitor–have essentially the same grievance?

*Fry*, 137 S. Ct. at 756 (emphasis in original) ("But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so.").  A plaintiff's reliance on the IDEA's administrative remedies is a strong indicator that the gravamen of his complaint is an IDEA claim based on the denial of a FAPE. *Id.* at 757.

Some courts have held that "[t]he IDEA should not be construed so broadly that any injury a disabled student suffers in school is automatically subject to the IDEA." *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1028 (W.D. Tex. 2013); *Pendergast as Next Friends of L.P. v. Wylie Indep. Sch. Dist.*, No. 4:18-CV-00020-ALM-KPJ, 2018 WL 6710034, at *5 (E.D. Tex. Dec. 4, 2018) (same). It is important to examine whether "the substance of the plaintiff's [tort] claim is unlikely to involve the adequacy of special education–and thus is unlikely to require exhaustion." *Fry,* 137 S. Ct. at 756.

Section 504 of the RA prohibits discrimination by recipients that receive federal funding. Specifically, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Title II of the ADA prohibits discrimination involving public services. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

## D.    Texas Human Resources Code Claim

The THRC provides that "[p]ersons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state[,]" and "[n]o person with a disability may be denied admittance to any public facility in the state because of the person's disability." Tex. Hum. Res. Code § 121.003(a) and (c). The THRC prohibits denying a disabled person the use of or admission to any public facility in the

state, which includes prohibiting any failure to "make reasonable accommodations in policies, practices, and procedures[.]" Tex. Hum. Res. Code § 121.003(d)(2).

Thus, the THRC applies to the admission and access to public facilities. *See Sadik v. University of Houston,* No. CIV.A. H-03-4296, 2005 WL 1828588, at *9 (S.D. Tex. Aug. 1, 2005) (holding that the THRC applies primarily to physical access to public facilities for disabled individuals); *see also Dabney v. Highland Park Indep. Sch. Dist.*, No. 3:15-CV-2122-L, 2016 WL 1273467, at *5 (N.D. Tex. Mar. 31, 2016).

## III. Discussion

### A. The Parties' Arguments

In their Original Complaint, Plaintiffs assert the following: (1) the "facts as previously described demonstrate that [BISD] violated J.V.'s rights as contemplated by the [ADA]" and BISD "failed and refused to reasonably accommodate and modify the services needed by J.V. in violation of [the ADA;]" (2) BISD violated § 504 of the RA by failing "to accommodate J.V.'s unique and individualized needs while on the field trip so he could be toileted safely, or provide him necessary modifications to the toileting practices used by [the educational aide] while on the field trip" and by failing "to provide [J.V.] a safe and non-hostile educational environment[;]" and (3) BISD violated the THRC by failing "to provide J.V. reasonable accommodations" and that J.V. "was injured because of such failures[.]" Dkt. No. 1 at 12-14.

In its Motion, BISD argues that this Court lacks subject mater jurisdiction over all of Plaintiffs' claims. Dkt. No. 5 at 2. By reference to the June 22, 2020 Opinion and Order in the First Federal Case, BISD argues that the Court lacks subject matter jurisdiction because Plaintiffs have not exhausted their administrative remedies. Dkt. No. 5 at 4.

Alternatively, BISD argues that the March 8, 2021 "Order Granting Stipulation of Dismissal With Prejudice" in the Second Federal Case, which involved an IDEA claim arising out of events allegedly occurring during the one year leading up to December 21, 2018, deprives the Court of subject matter jurisdiction over the instant ADA, § 504, and THRC claims, which arise out of the March 29, 2016 Incident.  *Id.*[5]

In their Response, Plaintiffs argue that BISD's Motion should be denied for lack of citation to authority.  *See* Dkt. No. 9 at 19.  However, BISD filed the Supplement, which contains citations to authority, and Plaintiffs did not respond timely thereto.  Dkt. Nos. 10, 15.[6]  Plaintiffs also argue that their ADA claim should survive the Motion because the TEA's one-year limitations period for filing IDEA claims violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.  Dkt. No. 9 at 24. The Court does not analyze this argument because no constitutional claim is pending in this case.[7]

---

[5] BISD refers to a March 29, 2016 Incident occurring at the Gladys Porter Zoo, but Plaintiffs allege the Incident occurred at an unidentified "Golden Cor[r]al" restaurant after BISD took the students to the Gladys Porter Zoo in Brownsville, Texas.

[6] On October 25, 2021, BISD filed the Supplement, and on January 13, 2022, Plaintiffs filed a response to the Supplement without leave to do so and without explanation for the delay.  Consequently, this Court struck the response to the Supplement.  Dkt. No. 15.

[7] "When a claim is raised for the first time in response to a [dispositive motion, the court] should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)."  *Riley v. School Bd. Union Parish*, 379 Fed. Appx. 335, 341 (5th Cir. 2010).  "This is particularly true where . . . the litigant is *pro se* and has not yet made any amendments to her complaint."  *Id.*  "In deciding whether to grant leave [to amend a complaint], the court may consider such factors as undue delay . . . and futility of the amendment."  *Matter of Southmark Corp*, 88 F.3d 311, 314-15 (5th Cir. 1996).  Here, Plaintiffs do not assert that the one-year limitations period for filing IDEA claims violates the Fourteenth Amendment in their Original Complaint, but rather do so for the first time in their Response.  Plaintiffs are represented by counsel, and as set forth in this Court's December 29, 2021 Order (Dkt. No. 12), filed an original complaint in the First Federal Case, amended complaint in the First Federal Case, and Original Complaint in the Third Federal Case, all of which arise out of the Incident.  Nonetheless, this Court construes this new claim as another Motion for Leave to Amend the Original Complaint ("Motion for Leave").  The Court denies the Motion for Leave because: (1) the amended complaint is futile as the addition of a Fourteenth Amendment claim does not alter the nature of Plaintiffs' lawsuit against BISD; and (2) the amended complaint would cause an undue delay since the same parties have been litigating claims arising out of similar allegations for more than four years.

Plaintiffs further argue that their ADA and § 504 claims should survive the Motion because the claims are unrelated to the IDEA's requirement to provide J.V. with a FAPE. *Id.* at 20.  Much of the remainder of the Response regarding the ADA claim is unclear, but Plaintiffs appear to argue that a failure to administratively exhaust the state administrative process does not deprive the Court of subject matter jurisdiction.  *Id.*  at 22.  Plaintiffs further argue that, under judicial estoppel, BISD cannot assert to the TEA (presumably in one of the three TEA Cases that Plaintiffs fail to identify) that the TEA lacks subject matter jurisdiction over the ADA and § 504 claims while now arguing that this Court also lacks subject matter jurisdiction.  *Id.* at 20-21.

Plaintiffs also argue that the one-year limitations period for filing an IDEA claim with the TEA does not apply to the filing of an ADA or § 504 claim in federal court. *Id.* at 22-23.   Plaintiffs do not specifically argue whether the Court has subject matter jurisdiction over the THRC claim.  Dkt. No. 9 at 19-24.

In its Supplement, BISD argues that BISD's obligations regarding the Incident arose from J.V.'s entitlement to a free appropriate public education.  Dkt. No. 10 at 5.  As a result, BISD asserts, Plaintiffs' ADA and § 504 claims overlap with potential administrative relief the IDEA requires them to obtain prior to filing a lawsuit in federal court.  *Id.*  In support thereof, BISD argues that Plaintiffs could not have brought the same claims if the purported conduct had occurred at a public facility that was not a school and that an adult at the school, such as an employee or visitor, could not have brought the same claims.  Dkt. No. 10 at 7.

BISD also argues that Plaintiffs' initial reliance on the IDEA's administrative remedies, through the First TEA Case, indicates that the gravamen of the Original Complaint in the Third Federal Case seeks relief under the IDEA.  *Id.*  Thus, BISD argues,

Plaintiffs' claims arise out of the IDEA's requirement to provide a free appropriate public education. *Id.* Finally, BISD argues that the final decision in the Third TEA Case does not constitute a substantive determination on the merits as required for administrative exhaustion under the IDEA, and therefore, all claims should be dismissed for lack of subject matter jurisdiction. *Id.* at 8, 10-12.

**B.     The gravamen of Plaintiffs' ADA and § 504 claims seeks redress for denial of a FAPE.**

Plaintiffs' ADA and § 504 claims should be dismissed with prejudice. A party must first exhaust the IDEA's administrative process before bringing claims under *other* statutes that overlap with the IDEA. *See Fry,* 137 S. Ct. at 750. Section 1415(l) of the IDEA allows non-IDEA claims to be brought in federal court, but only after the IDEA administrative procedures have been fully exhausted. 20 U.S.C. § 1415(l). Absent an exception, a plaintiff's failure to exhaust his state administrative remedies in accordance with the IDEA deprives the Court of subject matter jurisdiction. *See Wood v. Katy Indep. Sch. Dist.*, No. H-09-1390, 2010 WL 11417849, at *3 (S.D. Tex. Sept. 27, 2010).

When the gravamen of a complaint seeks redress for the denial of a FAPE, a plaintiff must exhaust his or her administrative remedies under the IDEA before bringing claims under § 504 and the ADA. *See Fry,* 137 S. Ct. at 754–56. To determine whether the gravamen of a complaint seeks redress for a denial of a FAPE under the IDEA as opposed to a right under § 504 of the RA or Title II of the ADA, the Court must examine the following two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school–say, a public theater or library? And second, could an *adult* at the school–say, an employee or visitor–have essentially the same grievance?

*Fry*, 137 S. Ct. at 756 (emphasis in original) ("But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so."). To determine whether Plaintiffs' claims fall under the IDEA, the Court applies the *Fry* analysis.

### 1.   Plaintiffs could not have brought essentially the same claim if the alleged conduct had occurred at a non-school public facility.

Under the first prong of the two-part test, the Court must ask "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school[?]" *Fry*, 137 S. Ct. at 756 (emphasis in original). Plaintiffs allege that, while a BISD educational aide was assisting J.V. in an unidentified Golden Corral restaurant during a field trip, the aide took the following actions: (1) transported J.V. by himself between the wheelchair and the restroom changing table; (2) "attempted to stretch J.V. beyond what was safe[;]" (3) alternatively, did not stretch J.V.; and (4) caused injury to J.V. Dkt. No. 1 at 8-9. Plaintiffs also allege that BISD "failed to pack J.V.'s adaptive toilet seat or take any extra padding[.]" Dkt. No. 1 at 8. Plaintiffs also argue that BISD is liable for the "acts and omissions" of the aide, who was responsible for J.V.'s care through his BISD position. Dkt. No. 1 at 14.

Plaintiffs could not have brought essentially the same claims if this conduct had occurred at a non-school public facility because a non-school public facility owes no duty to assist J.V. with his specific toileting needs. Moreover, if the Incident had occurred at the same Golden Corral restaurant when J.V. was not on a BISD field trip and not being cared for by a BISD educational aide, Plaintiffs could not have raised their instant ADA and § 504 claims against BISD. Therefore, the first prong of the *Fry* analysis shows that the gravamen of the Original Complaint seeks redress for denial of a FAPE.

**2.      An adult at the school could not have essentially the same grievance.**

Under the second prong of the two-part test, the Court must ask "could an *adult* at the school–say, an employee or visitor–have essentially the same grievance?" *See Fry*, 137 S. Ct. at 756 (emphasis in original).  Here, an adult at BISD could not bring the same grievance because Plaintiffs' claims primarily challenge BISD's failure to provide educational services.  Specifically, J.V. "received accommodations and modifications at school" that typically included "a special table that would be used to stretch his legs" and "skilled assistance" from two BISD staff members who transported him to and from a wheelchair when using a toilet.  Dkt. No. 1 at 4-5.  J.V. received these educational and supportive services from BISD precisely because he was an enrolled student with a qualifying disability.  An adult visitor or an employee at BISD could not bring the same claim.  Therefore, the second prong of the *Fry* analysis shows that the gravamen of the Original Complaint seeks redress for denial of a FAPE.

**C.      The IDEA requires Plaintiffs to exhaust their administrative remedies with the TEA prior to filing their ADA and § 504 claims in federal court.**

Here, Plaintiffs' ADA and § 504 claims require exhaustion with the TEA because they seek redress for denial of a FAPE and thus invoke the IDEA's prelawsuit administrative process, regardless of whether the TEA SEHO can provide relief for claims brought under the ADA and § 504. *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 648 (5th Cir. 2019); *Doe*, 194 F. Supp. 3d at 559 ("[A] plaintiff cannot avoid exhaustion requirements of the IDEA by repacking the claims under some other statute.") (internal citation and quotation marks omitted).

Further, Plaintiffs' decision to originally pursue their claims by invoking the IDEA's formal hearing process in the First TEA Case provides strong support that their

claims involve the denial of a FAPE.  *See Fry*, 137 S. Ct. at 757 ("A plaintiff's initial choice to pursue [the IDEA's] process may suggest that she is indeed seeking relief for the denial of a FAPE–with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy.").  Thus, Plaintiffs must exhaust their administrative remedies with the TEA and pursuant to the IDEA before filing their ADA and § 504 claims in federal court.

A plaintiff alleging claims under § 504 or the ADA must first exhaust his or her administrative remedies for claims under the IDEA when the relief being sought is also available under the IDEA's remedial scheme. *See Fry*, 137 S. Ct. at 750.  A plaintiff that chooses not to exhaust the IDEA administrative process cannot later claim damages, as courts have found below:

> The IDEA is intended to remedy precisely the sort of claim made by [plaintiff]: that a school district failed to provide [plaintiff] with appropriate educational services. The fact that [plaintiff] seeks damages, in addition to relief that is available under the IDEA, does not enable [plaintiff] to sidestep the exhaustion requirements of the IDEA. Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages.

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 (2d Cir. 2002).  Thus, that Plaintiffs seek damages in addition to relief available under the IDEA does not affect the requirement that Plaintiffs administratively exhaust their remedies with the TEA prior to filing suit in federal court.

**D.     Plaintiffs have again failed to obtain from the TEA a decision on the merits of their ADA and § 504 claims.**

To administratively exhaust their ADA and § 504 claims, Plaintiffs must obtain a decision on the merits of these claims from the TEA.  *Heston v. Austin Independent School District*, 816 Fed. Appx. 977, 983 (5th Cir. 2020) (where the Fifth Circuit held that

"jurisdictional rulings are not substantive determinations on the merits."). Significantly, a TEA decision dismissing a claim for lack of subject matter jurisdiction does not constitute a decision on the merits. *Id.* In the First Federal Case, this Court dismissed Plaintiffs' ADA and § 504 claims because Plaintiffs failed to first obtain an administrative decision on the merits from the TEA SEHO. *See J.V. v. Brownsville Indep. Sch. Dist.*, No. 1:18-CV-008, 2020 WL 3415747, at *9 (S.D. Tex. June 22, 2020). In the Third TEA Case, the TEA SEHO dismissed the ADA and § 504 claims for lack of subject matter jurisdiction. *See* Dkt. Nos. 10-3 at 5 and 10-4 at 2. Thus, Plaintiffs have again failed to obtain from the TEA a decision on the merits regarding their ADA and § 504 claims. Absent an exception, Plaintiffs' failure to exhaust their state administrative remedies deprives this Court of subject matter jurisdiction over the ADA and § 504 claims.

### E.    Plaintiffs' judicial estoppel exception argument fails.

Plaintiffs argue that judicial estoppel excuses the exhaustion of state administrative remedies. Dkt. No. 9 at 20-21. "Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). Judicial estoppel has three requirements: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (citing *Scarano v. Cent. R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). Plaintiffs allege that BISD asserted in the TEA Cases that the TEA SEHO lacked subject matter jurisdiction, but now argues that the federal courts also lack subject matter jurisdiction over the non-IDEA

claims. Plaintiffs' judicial estoppel exception argument is based on this change in BISD's position. *See* Dkt. No. 9 at 20-21.

BISD's position that a TEA SEHO lacks jurisdiction is not inconsistent with its current argument for mandatory exhaustion. *Heston*, 816 Fed. Appx. At 984 (where the Fifth Circuit held, in an analogous situation, that a school district's assertion that the TEA hearing officer lacked subject matter jurisdiction was not inconsistent with its mandatory exhaustion argument). In the TEA Cases, BISD argued that the SEHO lacked subject matter jurisdiction over the ADA and § 504 claims because the SEHO never has such jurisdiction. Here, BISD argues that the court lacks subject matter jurisdiction because Plaintiffs have not yet obtained a decision on the merits of the ADA or § 504 claims, as required under the IDEA. Thus, BISD's positions are not inconsistent, and Plaintiffs' judicial estoppel exception argument fails. As no exception applies, Plaintiffs' failure to exhaust their state administrative remedies deprives this Court of subject matter jurisdiction over the ADA and § 504 claims.

## F.     Texas Human Resources Code Claim

By moving to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1), BISD necessarily moves to dismiss Plaintiffs' THRC claim under Rule 12(b)(1). Dkt. No. 5 at 4. Plaintiffs' THRC claim should be dismissed with prejudice for lack of subject matter jurisdiction, albeit for lack of subject matter jurisdiction under 28 U.S.C. §§ 1331 or 1332 rather than for lack of subject matter jurisdiction based on Plaintiffs' failure to administratively exhaust the claim.

The THRC provides that "persons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state[,]" and "[n]o person with a disability may be denied admittance to any public facility in the state

because of the person's disability." Tex. Hum. Res. Code § 121.003(a) & (c).  The THRC prohibits denying a disabled person the use of or admission to any public facility in the state, which includes prohibiting any failure to "make reasonable accommodations in policies, practices, and procedures[.]"  Tex. Hum. Res. § 121.003(d)(2).  Thus, the THRC applies to the admission and access to public facilities.  *See Sadik v. University of Houston,* No. CIV.A. H-03-4296, 2005 WL 1828588, at *9 (S.D. Tex. Aug. 1, 2005) (holding that the THRC applies primarily to physical access to public facilities for disabled individuals); *see also Dabney v. Highland Park Indep. Sch. Dist.*, No. 3:15-CV-2122-L, 2016 WL 1273467, at *5 (N.D. Tex. Mar. 31, 2016).

Plaintiffs' THRC claim arises out of the Incident, which occurred during a BISD field trip in a restaurant restroom, which is not part of a BISD public facility.  Plaintiffs neither allege that J.V. was denied physical access to a public building owned or managed by BISD nor cite any authority that broadens the scope of the code to the extent they seek.  Nonetheless, BISD seeks dismissal of the THRC claim based solely on lack of subject matter jurisdiction.  BISD cites no authority showing why this Court lacks subject matter jurisdiction specifically over Plaintiffs' THRC claim.  While § 1415(l) of the IDEA requires administrative exhaustion of claims that seek relief thereunder and are brought pursuant to "the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws[,]" § 1415(l) does not explicitly require administrative exhaustion prior to filing state law claims in federal court.  20 U.S.C. § 1415(l).

Subject matter jurisdiction cannot be created by waiver or consent.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).  Further, courts must consider subject matter jurisdiction *sua sponte* if not raised by the parties.  *Id.*  Federal courts have subject

matter jurisdiction over claims brought under federal law.  28 U.S.C. § 1331.  Federal courts also have subject matter jurisdiction over claims between diverse parties where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Federal courts also have supplemental subject matter jurisdiction over claims, over which it would typically lack jurisdiction, where such claims arise out of the same controversy as other claims over which the court has original jurisdiction.  28 U.S.C. § 1367.

Here, Plaintiffs' THRC claim is neither a claim brought under federal law nor a claim between diverse parties.  Further, if Plaintiffs' ADA and § 504 claims are dismissed, then the Court will lack supplemental subject matter jurisdiction over the THRC claim.  Thus, the Court should dismiss the ADA and § 504 claims for lack of subject matter jurisdiction based on failure to administratively exhaust such claims, and the Court should dismiss the THRC claim for lack of subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, or 1367.

## G.    The Court should dismiss all claims with prejudice.

The Court should dismiss all claims with prejudice.  On March 29, 2016, the Incident occurred.  On January 12, 2018, Plaintiffs filed the First Federal Case. On June 22, 2020, this Court dismissed the ADA and § 504 claims for several reasons, one of which was explicitly because Plaintiffs had not obtained "an administrative decision on the merits issued by the SEHO."  *See J.V. v. Brownsville Indep. Sch. Dist.*, No. 1:18-CV-008, 2020 WL 3415747, at *9 (S.D. Tex. June 22, 2020).  Although the First TEA Case, Second TEA Case, Third TEA Case, First Federal Case, Second Federal Case, and Third Federal Case involve slightly different claims in two different time periods, the same Plaintiffs filed all six disputes arising out of BISD's treatment of J.V.  Thus, Plaintiffs have had more than sufficient opportunities to adequately plead this Court's subject matter jurisdiction

over Plaintiffs' ADA, § 504, and THRC claims.  In all but ignoring this Court's June 22, 2020 Opinion and Order, Plaintiffs have again failed to do so.

## IV.     Recommendation

For the reasons provided above, it is recommended that the Court: (1) **GRANT** the Defendant's Motion; (2) **DISMISS WITH PREJUDICE** all claims; and (3) **DIRECT** the Clerk of Court to close this case.

## V.     Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), superseded by statute on other grounds; 28 U.S.C. § 636(b)(1).

**SIGNED** on this **1st** day of **February, 2022**, **at Brownsville, Texas.**

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**